IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

TERRY LUNDY,                              §
     PLAINTIFF,                        §
                                         §
v.                                       §   CIVIL ACTION NO. 4:08-CV-485-Y
                                         §
MICHAEL J. ASTRUE,                       §
COMMISSIONER OF SOCIAL SECURITY,         §
     DEFENDANT.                        §

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation of

the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.      STATEMENT OF THE CASE

Plaintiff Terry Lundy filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title

42 of the United States Code for judicial review of a final decision of the Commissioner of Social

Security denying his claims for disability insurance benefits under Title II and supplemental security

income or SSI benefits under Title XVI of the Social Security Act.   Lundy applied for SSI benefits

on March 9, 2004, and disability insurance benefits on April 12, 2004, alleging disability beginning

October 5, 2003.  Lundy remained insured for purposes of disability insurance benefits at all times

relevant to the Commissioner's decision.

The Social Security Administration denied Lundy's applications for benefits both initially

and on reconsideration. Lundy then requested a hearing before an administrative law judge (the

"ALJ"), and ALJ James A. Wendland held a hearing on June 14, 2007, in Fort Worth, Texas. (Tr.

323). On September 26, 2007, the ALJ issued a decision that Lundy was not disabled and was not

entitled to disability insurance or SSI benefits because he was capable of performing a modified

range of sedentary work.[1] (Tr. 17-27). The Appeals Council denied Lundy's request for review of

his case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 6).

B.    STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental

impairment lasting at least twelve months that prevents the claimant from engaging in substantial

gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir.

1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-

step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently

working at any substantial gainful activity. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant

must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c),

416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d

378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination

of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R.

§§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's

medical status alone, the impairment or impairments must prevent the claimant from returning to

---

[1] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. 20 C.F.R. §§404.1567(a), 416.967(a).

his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.      ISSUE

Lundy asserts that the ALJ did not follow the law in evaluating the medical opinions in the record and did not give good reasons for rejecting the opinions offered by a treating source.

D.      ADMINISTRATIVE RECORD

1.      Treatment History

Lundy was born August 29, 1965.  He graduated high school, and he has worked as a truck driver and pizza delivery person.

Lundy underwent surgery in December 2000 to repair a right rotator cuff tear and was released in April 2001 to work on a part-time basis, but has continued to complain of pain and reduced range of motion in his shoulder.  (Tr. 161-67).  He also has bilateral carpal tunnel syndrome confirmed by diagnostic testing.  (Tr. 161).

Treating physician Lakheram Singh, M.D., issued a statement in October 2003 in which he declared that Lundy had been disabled since 2000 by scoliosis[2] and chronic low back pain.  (Tr.169).  Lundy underwent magnetic resonance imaging (MRI) of his thoracic and lumbar spine on December 22, 2003, which was interpreted as normal.  (Tr. 257).

Lundy saw orthopedic surgeon James Box, M.D., in December 2003.  Lundy reported that he was diagnosed with scoliosis when he was 21.  (Tr. 172).  He had previously worked construction-type jobs.  He complained of bilateral pain and numbness in the middle of his back, occasional numbness in his left leg, and numbness and muscle spasms in his right leg.  Lundy asserted that he had lost three inches in height as a result of scoliosis.  On examination, Box noted

---

[2] Scoliosis is a curvature consisting of lateral deviation in the normally straight vertical line of the spine. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1706 (31st ed. 2007).

-4-

mild scoliosis.  Lundy was able to forward flex to 80-90% of normal, heel and toe walk without difficulty, and perform straight leg raising to 90 degrees with some low back pain on the left side. Motor function was strong and equal, and deep tendon reflexes were slightly hyperactive.  (Tr. 172-73).  Box diagnosed thoracolumbar scoliosis and mild radiculopathy,[3] and recommended that Lundy retrain for lighter work.  (Tr. 173).

Box also completed a residual functional capacity questionnaire and opined that Lundy could frequently lift ten pounds; sit for one or two hours at a time for a total of two to four hours during the workday; stand for less than one hour at a time for a total of one to two hours during the workday; and walk for one or two hours at a time for a total of two to four hours during the workday. (Tr. 170-71). Box advised that Lundy was capable of climbing one or two flights of stairs.  Lundy could occasionally bend, squat, and kneel; frequently reach overhead and at shoulder level; and occasionally reach below waist-level.  Lundy was capable of simple grasping, fine work, and low-speed assembly, but precluded from performing high-speed assembly.  Box also opined that Lundy should avoid damp or wet conditions, fumes, and heights.  Box concluded that Lundy could work six to eight hours a day and was capable of participating in vocational training.  (Tr. 171).

Diagnostic tests in February 2004 revealed very minimal scoliosis.  (Tr. 256).  In May 2004, Lundy's records were reviewed by a physician for the Texas Rehabilitation Commission, who opined that Lundy's degree of scoliosis was not a disabling condition and expressed concern that Lundy was abusing his prescription medications because the minimal physical evidence indicated that he should not require the powerful drugs he was taking.  (Tr. 183).

---

[3]  Radiculopathy refers to disease of the nerve roots.  *Id.* at 1595.

Lundy also underwent a consultative internal medicine evaluation on August 20, 2004, with S.R. Boya, M.D. (Tr. 185). He rated his back pain as 5 on a scale of 10, and complained that the pain interfered with his sleep. Lundy advised that his physician had told him that he must live with the pain because surgery might paralyze him. Lundy complained that he had injured his left shoulder and lifting his arm overhead was painful, so he used his right arm to compensate. Lundy also reported a history of bilateral carpal tunnel syndrome. (Tr. 186).

Examination of Lundy's back was unremarkable. He exhibited normal range of motion. Grip strength was 3+/4+ in both hands. He had no sensory deficits. His gait was normal, and he was able to walk on his heels and toes. Lundy was able to bend 90 degrees, but could not squat. Lundy estimated that he could sit for half an hour before needing to stand and stretch; walk one block; and lift ten pounds or less. (Tr. 187). Boya concurred with the diagnosis of a five-degree thoracic scoliosis. (Tr. 188).

Singh completed a functional capacity questionnaire for Lundy in April 2005. He opined that Lundy was able to sit for two hours in an eight-hour workday, stand or walk for a total of thirty minutes, and lift or carry up to twenty pounds occasionally. (Tr. 222-23). Singh also found Lundy's ability to grasp, push, pull, or perform fine manipulation was affected, as was his ability to use his feet for repetitive operation of foot controls. Singh opined that Lundy should never squat, crawl, climb, stoop or crouch, but could occasionally bend, reach, and kneel. He recommended that Lundy avoid unprotected heights, moving machinery, and marked temperature changes. Singh indicated that Lundy had a moderate level of chronic pain requiring medication and frequent rest periods during the day, and anticipated that Lundy would frequently miss work and would be an unreliable employee. (Tr. 225-26).

Lundy was referred for a neurosurgical consultation with Sanjoy Sundaresan, M.D., on February 9, 2007, for complaints of severe low back pain that radiated into his legs. (Tr. 260-61, 276). Lundy rated his pain as an 8 on a scale of 10. Sundaresan reported no significant findings on physical examination, but recommended additional diagnostic tests. He also opined that Lundy's use of narcotics was reasonable because Lundy reported that he had tried non-narcotic medications in the past without relief. Sundaresan observed no evidence of medication-seeking behavior or malingering. (Tr. 276). Sundaresan ordered another MRI in April 2007, which showed mild right-sided thoracic scoliosis, but was otherwise negative. (Tr. 272-73).

At a follow-up examination on April 27, 2007, Lundy complained of radiating upper and lower back pain. He reported that his legs gave way and he had difficulty walking even short distances. (Tr. 275). He took medication twice a day to relieve pain and muscle spasms, and did fairly well on this regimen. Lundy's gait was slightly antalgic, and he exhibited difficulty moving from a seated to standing position. Lundy declined an offer of pain-relief injections, and was instructed to continue using his medication as prescribed. (Tr. 275). Electromyography (EMG) results in May 2007 showed possible radiculitis.[4] (Tr. 284).

2.      ALJ Decision

The ALJ found that Lundy had not worked since October 2003 and had a shoulder impairment and learning disorder, which were severe impairments that did not meet or medically equal any listed impairment. (Tr. 19). The ALJ found Lundy retained the residual functional capacity (RFC) to perform sedentary work that did not requiring stooping, crouching, crawling,

---

[4] Radiculitis involves inflammation of the root of a spinal nerve. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1595 (31st ed. 2007).

kneeling, or climbing stairs and ramps more than occasionally; balancing or climbing of scaffolds,

ladders, and ropes; sitting for more than thirty minutes at a time without an opportunity to stand (in

addition to lunch and normal work breaks during the day); working above shoulder level with the

upper extremities; repetitively pushing, pulling or performing extended reaching with the dominant

left upper extremity; pushing or pulling with the feet; handling or fingering objects more than

frequently; working at unguarded heights or near unguarded hazardous mechanical equipment;

working with more than a mildly decreased ability to maintain attention and concentration; more

than the lower end of detailed instructions; or interacting with the public. (Tr. 23).

The ALJ determined that Lundy's RFC was not compatible with any of his past relevant

work. (Tr. 25). But based on testimony elicited from the vocational expert during the administrative

hearing, the ALJ found that Lundy was able to perform other work that existed in significant

numbers in the national economy. Examples included work as an inspector or assembler. (Tr. 26,

357). Accordingly, the ALJ concluded that Lundy was not disabled for purposes of the Social

Security Act. (Tr. 27).

E.    DISCUSSION

Lundy contends that the ALJ did not comply with the law in this circuit and administrative

regulations governing evaluation of medical opinion evidence. In addition, Lundy asserts that the

ALJ failed to provide good reasons for not adopting Singh's opinions as a treating source.

Generally, opinions, diagnoses, and medical evidence from a treating physician who is

familiar with a claimant's impairments, treatments, and responses should be given great weight in

determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v.

Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). The ALJ assigns controlling weight to the opinions of a

treating physician if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). The disability regulations also set forth factors to be considered in weighing medical opinions, which include the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization. *See* 20 C.F.R. §§ 404.927(d), 416.927(d); SOCIAL SECURITY RULING 96-2p, 96-5p. Absent competing firsthand medical evidence, the ALJ must consider each of these factors before declining to give any weight to the opinions of a treating physician. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). The determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 564; *Greenspan*, 38 F.3d at 237.

The ALJ affirmed that he had considered the medical opinion evidence in accordance with the regulations and the relevant Social Security Rulings. (Tr. 23). The ALJ summarized Singh's assessment, but gave little weight to those opinions. (Tr. 25). The ALJ explained that only minimal findings had appeared on examination and diagnostic testing, and Singh assessed limitations that were inconsistent with the clinical and other objective findings and were rebutted by the opinions from other physicians. (Tr. 25). The ALJ stated that he gave great weight to Box's opinions because his statements were realistic and consistent with clinical and diagnostic findings. (Tr . 25).

Although the ALJ did not expressly apply each of the relevant factors, his decision reflects

that he considered those factors in substance and appreciated Singh's role as a treating source, (Tr. 20, 25), but determined that Singh's opinions overall lacked support, which is a valid basis for rejecting the opinions.  Moreover, the ALJ favored the firsthand opinion evidence from examining physician Box as being more consistent with the record.   In *Newton*, the Fifth Circuit directed the ALJ to expressly consider all of the regulatory factors before rejecting a treating source opinion, but expressly excluded from the scope of *Newton* those cases where there is competing firsthand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.  *Newton*, 209 F.3d at 458; *Bragg v. Commissioner of Soc. Sec.,* 567 F. Supp. 2d 893, 909 (N.D. Tex. 2008).

Lundy contends that the ALJ's rationale is flawed because Box's assessment is not materially inconsistent with Singh's findings.  He contends that the two opinions essentially diverge only on the amount of standing and walking that Lundy could perform and that this discrepancy can be explained by the two years that elapsed between Box's assessment and Singh's assessment.  Lundy's contention is not supported by a comparison of the two physician's reports.  Box's assessment in particular concludes with the determination that Lundy is physically able to participate in vocational retraining within the limits that Box identified, whereas Singh's assessment reflects the opposite position.  In addition, Lundy has not challenged the ALJ's explanation that the objective findings on examination and diagnostic testing contradicted Singh's opinions as well.

Lundy also asserts that the ALJ misconstrued Box's opinion as evidence that Lundy could work a full eight-hour day because Box actually stated that Lundy could perform a workday of six to eight hours' duration.  The ALJ correctly stated that Box had found Lundy capable of working six to eight hours per day, (Tr. 21), and the ALJ's use of this information as evidence that Lundy

-10-

could work full-time if restricted to a modified range of sedentary work was not improper.  RFC is not the least an individual can do, but the most that he can still do despite his limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); SOCIAL SECURITY RULING 96-8p.  *See also  Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).

The ALJ's decision to assigned greater weight to Box's opinions and discount the opinions that Singh offered is supported by substantial evidence and complies with the law of this circuit and the applicable regulations and administrative rulings.

<u>RECOMMENDATION</u>

It is recommended that the Commissioner's decision be affirmed.

<u>NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT</u>

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document.  The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until April 30, 2009.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions

accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until April 30, 2009, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED APRIL 9, 2009.

    /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE